Francis C. Flaherty
Nevada Bar No. 5303
Casey C. Gillham
Nevada Bar No. 11971
DYER LAWRENCE, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896
fflaherty@dyerlawrence.com
cgillham@dyerlawrence.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JENNY A. HUNT, f.k.a. JENNY A. RICCI, | ) CIVIL ACTION  NO.: |
| Plaintiff, | ) |
| | ) **COMPLAINT** |
| vs. | ) |
| | ) |
| WASHOE COUNTY SCHOOL DISTRICT, a political subdivision of the State of Nevada, | ) ) ) |
| | ) |
| Defendant. | ) |

PLAINTIFF JENNY HUNT (hereinafter "Hunt" or "Plaintiff"), by and through her counsel, Dyer Lawrence, LLP, and Francis C. Flaherty, Esq., hereby files this Complaint against the Defendant captioned above.

### STATEMENT OF THE CASE

### PARTIES

1.    Plaintiff is a citizen of the United States and the State of Nevada and at all material times was employed by Defendant Washoe County School District as a Student Support Services Performance & Instruction Executive Director.

2.    Defendant Washoe County School District ("WCSD," "District" or "the District") is a political subdivision of the

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

State of Nevada and a "person" subject to suit within the meaning of 42 U.S.C. § 1983.

3.   WCSD is an "employer" within the meaning of 42 U.S.C. § 2000e.

4.   At all material times, Kristen McNeill ("McNeill") worked within the District, and held the title of deputy superintendent.

5.   At all material times, McNeill was an agent and/or employee of Defendant District, acting or failing to act within the scope, course, and authority of her employment and her employer.

6.   At all material times, Traci Davis ("Davis") worked within the District, and held the title of superintendent.

7.   At all material times, Davis was an agent and/or employee of Defendant District, acting or failing to act within the scope, course, and authority of her employment and her employer.

8.   At all material times, Paul LaMarca ("LaMarca") worked within the District, and held the title of Chief School Performance Officer.

9.   At all material times, LaMarca was an agent and/or employee of Defendant District, acting or failing to act within the scope, course, and authority of his employment and his employer.

## JURISDICTION AND VENUE

10.   This case arises under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §§ 1983 and 1988, as amended, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a), Title II and V of the ADA, 42 U.S.C. §12133, §12203, and Section 504 of the Rehabilitation Act, 29 U.S.C. §794a.

/ / /

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

- 2 -

11.   This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

12.   This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

13.   The declaratory and injunctive relief sought is authorized by 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 1983, and Rule 57 of the Federal Rules of Civil Procedure.

14.   This Court may exercise supplemental jurisdiction over Plaintiff's state law claims arising under the common law, statutes and regulations of the State of Nevada, and which arise from a common nucleus of operative fact pursuant to 28 U.S.C. §1367.

15.   This judicial district's unofficial northern division is the appropriate venue for this cause of action pursuant to 28 U.S.C. §1391(b)(1) and (b)(2).   The actions complained of took place in this judicial district; employment records and other evidence relevant to the allegations are maintained in this

/ / /

judicial district; and Defendant regularly conducts its affairs in this judicial district.

<u>**ADMINISTRATIVE PREREQUISITES**</u>

16.   Plaintiff has complied with any and all administrative prerequisites for filing a civil action under Section 706 of Title VII of the Civil Rights of 1964, as amended, 42 U.S.C. §2000e-5 as follows:

> A.   On November 20, 2017 Plaintiff timely filed a formal charge of sex discrimination and retaliation with the Nevada Equal Rights Commission ("NERC"), and with the Equal Employment Opportunity Commission ("EEOC");
>
> B.   Plaintiff and her counsel promptly and diligently accommodated all NERC and EEOC requests for information and fully cooperated in the agencies' investigations of this matter;
>
> C.   Plaintiff exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this civil action, and Plaintiff and her counsel received a Right-to-Sue letter from the Los Angeles District Office of the EEOC on August 13, 2018.

17.   Plaintiff has complied with any and all administrative prerequisites for filing a civil action under Title IX of the Education Amendments Act of 1972, Section 504 of the Rehabilitation Act of 1973 and Title II and Title V of the ADA.

> A.   On August 2, 2017 Plaintiff timely filed a charge of discrimination and retaliation with the Office for Civil Rights of the United States Department of Education ("OCR").

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

- 4 -

B.    Plaintiff and her counsel promptly and diligently accommodated all OCR requests for information and fully cooperated in the agency's investigation of this matter;

C.    Plaintiff exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this civil action, and Plaintiff and her counsel received a Right-to-Sue letter from Region X of OCR on or about November 8, 2017.

## FACTUAL ALLEGATIONS

18.   The District implemented and executed policies and customs in regard to the events that resulted in deprivation of Plaintiff's constitutional, statutory and common law rights.

19.   The District is responsible for ensuring that all its employees are properly trained and supervised to perform their jobs.

20.   The District is responsible for the acts and omissions of its employees.

21.   Defendant, in contravention of sound and proper public policy, terminated Plaintiff. The effect of terminating Plaintiff was to effectuate a discriminatory purpose toward Plaintiff by Defendant.

22.   In 2015 the State of Nevada Department of Education ("NDE") issued directives to the District regarding Special Education and expressed concerns with the services the District provided for students with disabilities and compliance with the Individuals with Disabilities Education Act ("IDEA"); specifically, that the District's "recurrent violations" might "be indicative of

/ / /

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

a fundamental systematic noncompliance with the IDEA and Nevada law."

23.  The District spent $90,000 to retain an educational consulting firm, WestEd, to conduct an investigation regarding areas in need of improvement.  In the wake of the WestEd investigation and report, Davis: declared that reforming the District's Special Education practices and processes would be a priority in the District; re-allocated resources and made leadership changes, to include naming Dr. Byron Green as the Chief of the Office of Student Services ("OSS"); and, began to implement reform in accordance with NDE's mandates and the results of the WestEd investigation.

24.  Throughout the 2015-2016 school year, under the supervision and direction of Dr. Green, Plaintiff and her male colleague, David Frydman, worked with area superintendents, school principals, McNeill and Davis to implement changes and systems to ensure compliance with the IDEA.  During the year, OSS met with resistance and push-back from schools and school administrators in response to the guidance provided by Plaintiff to make the District IDEA compliant.  At that time, LaMarca was the District's Chief School Performance Officer and was responsible for supervision of area superintendents and daily operations in all District schools, but he was also actively soliciting complaints against OSS and Plaintiff from District principals.

25.  The resistance and push-back referenced above were manifested in the complaints brought forward by LaMarca that were filed against Plaintiff by individuals and the Washoe School Principals Association ("WSPA") specific to the guidance Plaintiff

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

- 6 -

provided to schools to comply with the IDEA and District guidelines.

26.   Upon receipt of each complaint, Plaintiff requested feedback from Dr. Green, and she also requested his review of her ongoing emails to principals in an effort to prevent or mitigate future complaints.   Dr. Green's feedback to Plaintiff was that her behavior was professional, that her decisions were supported by the data and that a change was not needed.

27.   Dr. Green worked with McNeill and Davis to address the complaints, while also refining communication plans and roles/responsibilities to ensure compliance with IDEA. Subsequently, those refined roles and responsibilities were documented and confirmed in an August 4, 2016 memorandum to all District staff from McNeill and Dr. Green.   LaMarca was also listed as an author of that memorandum.   At no point in the wake of these complaints or the August 4th memorandum was Plaintiff ever directed by Dr. Green, McNeill or Davis to alter her approach or the guidance she was providing, as directed by the Davis and Dr. Green.

28.   In the spring of 2016, WSPA submitted a letter to Davis in response to a series of articles published in the Reno Gazette Journal ("RGJ") about special education in the District.   Those articles were the culmination of a two-year investigation by the RGJ, which revealed that despite the direction from NDE in 2015:

- The District graduation rate for special education students was far below the national average.

- The District's institutional mentality for special education students was one of "low expectations."

/ / /

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

- 7 -

- The District was inappropriately segregating special education students from their regular education peers.
- Special education students have been abused at the District.

The WSPA letter was an exercise in evasion of responsibility and a "run for cover" in which the WSPA lashed out at OSS and claimed that OSS, as opposed to the RGJ expose, was causing low morale in the District.

29. In the spring of 2016, Plaintiff began sharing with Dr. Green her concerns regarding: untruthful allegations leveled against OSS by principals, WSPA and LaMarca; disregard of the communications and guidance provided to school sites; and, the bullying behavior exhibited by LaMarca. Of great concern to Plaintiff was the fact that LaMarca did not treat her male peer, David Frydman, the same way he treated her. By way of example, in addition to Mr. Frydman not being the target of a series of solicited, spurious complaints, LaMarca refused to work directly with Plaintiff on cases and issues arising at the school level, whereas he worked directly with Mr. Frydman in such situations. Additional examples of unequal treatment were provided by Plaintiff in a formal complaint she filed with the District regarding LaMarca's behavior on May 19, 2017.

30. At the start of the 2016-17 school year, principals, area superintendents and LaMarca continued to resist when given guidance and direction from OSS. Davis and McNeill convened a Leadership Team meeting in September of 2016 at which they reaffirmed their previously announced expectations for special education to include "holding staff accountable," ensuring IDEA compliance, and

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

professional communication and behavior with colleagues. The guest speaker at the meeting was District Deputy Chief General Counsel Chris Reich, who reviewed disciplinary and documentation procedures and due process rights for staff.

31.  Based on the direction reiterated from McNeill and Davis, Dr. Green and his staff, including Plaintiff, continued to follow through on providing guidance for special education reform. Principals, area superintendents, and LaMarca repeatedly resisted, made dishonest allegations, and disregarded the systems put in place by OSS, systems intended to support and drive reform and IDEA compliance. Despite the direction provided in the August 4, 2016 memorandum, school principals continued to make decisions that were against the law and ignored OSS guidance. The principals were encouraged in this regard by LaMarca, who continued to advocate that principals should use their "professional judgment" for decision making with IEP teams, rather than complying with the IDEA and rooting decision-making in data. For example, special education students were moved to more restrictive classroom environments without sufficient data to support and justify the change in their educational placement, and schools continued to fail to implement Individual Education Plans ("IEPs") for special education students.

32.  By way of collaboration and communication, Plaintiff provided direct guidance for schools specific to IEP compliance and recommended changes, but the schools failed to follow the guidance or undertake recommended changes. Plaintiff copied District leadership in those communications, including but not limited to Sara Almo, District Associate General Counsel, who advises the

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

- 9 -

District regarding special education matters, District Compliance Administrator Jessica Medulla, LaMarca, Dr. Green, McNeill and area superintendents.

33.   In an effort to prevent and mitigate future complaints, Plaintiff and Dr. Green requested meetings to collaborate and mediate with principals, but neither the area superintendents, LaMarca nor McNeill ever responded to the requests, and the meetings did not happen.

34.   Plaintiff again communicated her concerns to Dr. Green, which included concerns of bullying and harassment by LaMarca and school principals, who continued to target Plaintiff by way of bogus complaints and untruthful allegations.   Dr. Green indicated that he provided this information to his supervisor in a meeting and in an email and concurred with Plaintiff that he believed the behavior from LaMarca and the WSPA president, Alison Kendrick, was bullying and harassment.

35.   In the fall of 2016, the principal at Virginia Palmer ES and LaMarca made false allegations that Palmer ES was not provided support by OSS and that Plaintiff was unprofessional. The District initiated an internal investigation conducted by Walt Lyman. Plaintiff shared her concerns of being bullied and harassed by LaMarca with Mr. Lyman, but no action was taken.

36.   On March 30, 2017, Plaintiff was placed on administrative leave pending investigation of allegations that she had engaged in misconduct.   At approximately the same time, Dr. Green was also placed on administrative leave pending investigation of allegations that he had engaged in misconduct.   Plaintiff subsequently received

/ / /

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

communications regarding investigatory meetings concerning varying, vague, nonspecific allegations.

37.   On April 3, 2017, Plaintiff shared her concern with McNeill that this was continued harassment and bullying by WSPA and LaMarca.   McNeill responded to Plaintiff that she would add Plaintiff's concern to the investigation being conducted by the outside investigation firm, Solutions as Work.   However, Plaintiff was not asked about her allegations during the interviews with Solutions at Work.   Plaintiff herself brought the issue up during an interview and received a glib and cursory response of "how is that bullying?"

38.   On May 5, 2017, Plaintiff sent a letter to Davis, McNeill and District General Counsel Neil Rombardo regarding her concerns of bullying and harassment that had not been addressed and her unequal treatment by the District.

39.   Mr. Rombardo subsequently informed counsel for Plaintiff that Plaintiff was "mistaken" and did not ever indicate she had concerns.   As stated above, Plaintiff filed a formal complaint on May 19, 2017.

40.   Prior to the April 25th investigatory meeting with Solutions at Work, commencing on April 7th, Plaintiff's attorney attempted to contact the office of McNeill with questions, as Plaintiff was directed to do in her March 30, 2017 Notice of Administrative Leave; and, he also called the District Office of General Counsel three times in preparation for the interviews. Plaintiff alerted McNeill that her attorney's phone calls were not being returned in a phone conversation the two of them had on April 10th, but Plaintiff's attorney's calls were never returned.

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

41.   During the April 25th and May 2nd investigative meetings, Plaintiff was not asked any specific questions, but was asked to respond to vague questions and "scenarios."  During the meetings, Plaintiff's attorney asked for more specific information so that Plaintiff could answer the questions.  The investigators responded by saying that they did not have the specific information with them.   Plaintiff was not provided access to email, calendar, or daily journals to use as a reference to respond to the vague questions.  These questions included, but were not limited to:

- "Did you attend a meeting for psychologists?"

- "Do you remember if the meeting went well?"

- "Why did you go to the meeting?"

- "Does anyone feel supported by you?"

- "Do any Principals feel supported by you?"

Other questions that Plaintiff was asked during the investigation had no rational relationship to supposed allegations of bullying, harassment and/or misconduct on the part of Plaintiff. Specifically, the following questions could not possibly have had any bearing on whether or not Plaintiff engaged in any misconduct:

- "What kind of relationship does Byron [Green] have with [Supt.] Traci Davis?"

- "Do you know if Byron has any other relationships in the superintendent's office?"

- "How did you learn about your job?"

Plaintiff felt harassed and intimidated during these biased, result-oriented investigative meetings conducted by Solutions at Work.

/ / /

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

42.   In the Spring of 2017, Dr. Green was also the subject of an investigatory interview conducted by Solutions at Work. Unlike Plaintiff, Dr. Green was provided with access to his email, calendar and other materials to use as a reference in responding to questions.

43.   On May 11, 2017, Plaintiff's attorney sent a letter to the District legal office requesting a copy of Plaintiff's records of employment pursuant to NRS 613.075. In that letter, he reminded the District that Plaintiff had been on leave for nearly six weeks pending investigation, and he suggested a meeting or mediation among Plaintiff and any complainants to bring resolution to the matter so that all parties could get back to doing the work of the District regarding special education.

44.   The District's putative "investigation" then dragged on for another 23 weeks before Plaintiff was summarily dismissed on October 23rd, bringing Plaintiff's total administrative leave time to more than 29 weeks.

45.   At least five District Leadership Team members have been accused of bullying/harassment over the last four years. None of these individuals have been put on leave for such an extended period pending investigation.

46.   On June 26, 2017, Plaintiff was contacted by another outside investigation firm retained by the District, Grate Investigation, regarding her May 17th complaint against LaMarca. An interview was scheduled for June 27, 2017. Plaintiff repeatedly told the investigator that without access to her email, calendar, or daily journals to use as a reference, it was extremely difficult

/ / /

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

to answer his questions, especially because his questions were so vague; but, Plaintiff was not given access to those materials.

47. Plaintiff's attorney was assured in a telephone conversation with and follow up email from Mr. Reich (attorney for the District) that this investigation had nothing to do with the investigation previously executed by Solutions at Work and the allegations against Plaintiff, and that the investigation only concerned Plaintiff's complaint against LaMarca. Yet, investigator Grate began the interview with Plaintiff by stating that his role was to "clean up from the first investigation." Mr. Grate questioned Plaintiff for 2 hours with a focus on trying to correlate his questions and her responses to information obtained in the Solutions at Work investigation. Mr. Grate asked Plaintiff questions consistent with an investigation of a complaint against her, such as:

- "I want to know who you work well with."

- "Do any principals like you"?

- "Were there concerns from Principals about you presented in formal complaints"?

- "Did you see them"?

These questions had no relevance to the complaint by Plaintiff against LaMarca. The interviews Plaintiff endured with Solutions at Work and Grate Investigations were biased and retaliatory, and constituted harassment and intimidation.

48. The pretext of McNeill's October 23rd dismissal letter is that Plaintiff was dismissed for dishonesty (denying discussions with District staff during the investigation) and unprofessional conduct.

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

- 14 -

49.   Dr. Green also engaged in discussions with District Staff during the investigation, but the District did not attempt to dismiss Dr. Green.

50.   In fact, the District's dismissal of Plaintiff was retaliation for her efforts to enforce the policies and practices necessary to bring the District into compliance with state and federal law regarding special education students.

51.   The District's dismissal of Plaintiff was also retaliation for Plaintiff's complaints of sex discrimination by LaMarca.

52.   The District failed to seriously investigate Plaintiff's sex discrimination complaint against LaMarca and dismissed Plaintiff prior to even completing that investigation.

53.   The District's dismissal of Plaintiff is allegedly authorized by its official policy of employing "Leadership Team" employees on an "at will" basis at the pleasure of the Superintendent of Schools. The District alleges that such at-will employees are not entitled to a hearing before a hearing officer pursuant to NRS 391.765 to 391.800.

### FIRST CLAIM FOR RELIEF
**Violation of Due Process Guaranteed by the Fourteenth Amendment**

54.   Plaintiff repeats and realleges each of the allegations as if fully set forth at length and incorporated herein by reference.

55.   Plaintiff was entitled to due process pursuant to NRS 391.765 to NRS 391.800 before dismissal.

56.   These statutes gave Plaintiff a property interest in her employment.

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

- 15 -

57.   On or about October 23, 2017, Defendant dismissed Plaintiff.

58.   Defendant did not provide Plaintiff with the due process required pursuant to NRS 391.765 to NRS 391.800 inclusive before dismissing her.

59.   Defendant's decision to dismiss Plaintiff without providing her a hearing pursuant to NRS 391.765 to NRS 381.800 inclusive violated Plaintiff's due process rights as guaranteed by the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

60.   As a direct and proximate result of Defendant's violations of Plaintiffs's constitutional rights, Plaintiff suffered severe and substantial damages.  These damages include lost salary, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress, consequential damages and other compensatory damages in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
### Sex Discrimination in Employment
### Title VII, Civil Rights Act of 1964

61.   Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

62.   Defendant conducted itself with malice and/or reckless indifference to Plaintiff's statutory rights under Title VII of the Civil Rights Act of 1964.

63.   Plaintiff is female.

/ / /

/ / /

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

- 16 -

64.   LaMarca discriminated against Plaintiff due to her gender by repeatedly making untruthful complaints against her, and actively soliciting such complaints from others.

65.   LaMarca discriminated against Plaintiff due to her gender by treating her differently from her male colleague David Frydman. By way of example, LaMarca did not make untruthful allegations against Mr. Frydman and refused to work with Plaintiff on cases and issues arising at the school level, while working directly with Mr. Frydman on such cases and issues.

66.   Defendant hired a company to investigate LaMarca's untruthful allegations against Plaintiff.  The company, Solutions at Work, conducted a biased, results-oriented investigation intended to corroborate the predetermined decision to discipline Plaintiff.

67.   Defendant discriminated against Plaintiff in that she was denied access to her email, calendar and daily journals during its investigation, but Defendant afforded such access to Dr. Green during its investigation.

68.   On May 19, 2017, Plaintiff filed a formal complaint with the Defendant about LaMarca's discriminatory behavior.

69.   Defendant hired a second investigator, Grate Investigations, putatively to investigate Plaintiff's complaint against LaMarca.  The District terminated Plaintiff prior to Grate Investigation even completing its investigation of Plaintiff's complaint.

70.   Plaintiff suffered severe emotional, psychological, vocational and financial damages as a proximate cause of Defendant's conduct.

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

71.   Accordingly, Plaintiff is entitled to compensatory, punitive and other appropriate damages and attorney fees and costs.

### THIRD CLAIM FOR RELIEF
### Sex Discrimination in Employment
### Title VII, Civil Rights Act of 1964
### Retaliation/Retaliatory Termination

72.   Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

73.   Plaintiff opposed any and all sex discrimination imposed upon her by Defendant, throughout her employment with WCSD.

74.   Defendant subsequently took adverse action against Plaintiff, primarily in the form of the termination of her employment on the basis of engineered pretexts.

75.   Plaintiff's opposition to Defendant's sex discrimination was the motivating factor behind her pretextual termination.

76.   Defendant conducted itself with malice and/or reckless indifference to Plaintiff's statutory rights under Title VII of the Civil Rights Act of 1964.

77.   All such wrongful conduct was committed by supervisors, with the authority to hire, fire, and take adverse action against Plaintiff, or transpired with the full knowledge and awareness of Defendant.

78.   Plaintiff suffered severe emotional, psychological, vocational and financial damages as a proximate cause of Defendant's conduct.

79.   Accordingly, Plaintiff is entitled to compensatory, punitive and other appropriate damages and attorney fees and costs.

/ / /

/ / /

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

- 18 -

**FOURTH CLAIM FOR RELIEF**
**Title IX**

80.  Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

81.  The District is a recipient of federal education funding, and subject to the provisions of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, et seq.

82.  Plaintiff challenged the sex discrimination of LaMarca by complaining about it to supervisors and the District's lawyer.

83.  Defendant retaliated against Plaintiff due to Plaintiff's challenge to this sex discrimination by investigating her and ultimately firing her.

84.  Plaintiff suffered severe emotional, psychological, vocational and financial damages as a proximate cause of Defendant's conduct.

85.  Accordingly, Plaintiff is entitled to compensatory, punitive and other appropriate damages and attorney fees and costs.

**FIFTH CLAIM FOR RELIEF**
**Violation of Title II and Title V of the Americans with Disabilities Act - Retaliation**

86.  Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

87.  Defendant is a public entity subject to Title II and Title V of the ADA.

88.  Defendant violated the ADA by intentionally frustrating Plaintiff's attempts at ensuring that schools within the District complied with federal laws designed to help students with disabilities, and ultimately terminating Plaintiff's employment due to her efforts.

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

- 19 -

89. Defendant's actions constitute discrimination in violation of Title II of the ADA, 42 U.S.C. §12132, and its implementing regulations, 28 C.F.R. Part 35.

90. Defendant's actions constitute retaliation in violation of Title V of the ADA, and its implementing regulations.

91. All conditions precedent to the filing of this claim have occurred or have been performed.

92. Accordingly, Plaintiff is entitled to compensatory, punitive and other appropriate damages and attorney fees and costs.

## SIXTH CLAIM FOR RELIEF
### Violation of Section 504 of the Rehabilitation Act - Retaliation

93. Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

94. Defendant, which is a recipient of federal financial assistance, discriminates against "qualified individuals with a disability" within the meaning of the Rehabilitation Act by administering programs and services for individuals with disabilities in a manner that denies the individuals the opportunity to receive services in the most integrated setting appropriate to their needs.

95. Plaintiff attempted to ensure that Defendant complied with the federal laws designed to help students with disabilities, and was terminated as a result.

96. All conditions precedent to the filing of this claim have occurred or have been performed.

97. Accordingly, Plaintiff is entitled to compensatory, punitive and other appropriate damages and attorney fees and costs.

/ / /

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

### SEVENTH CLAIM FOR RELIEF
### Violation of Nevada Statutory Protections

98.   Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

99.   WCSD is an "employer" within the meaning of NRS 613.310.

100. NRS 613.330 makes it unlawful for an employer to discriminate against any employee because of sex.   Defendant's conduct as detailed herein, was in fact illegal. Plaintiff was subjected to sex related and motivated discriminatory practices, comments, and actions affecting her compensation, terms, conditions or privileges of employment, all of which are illegal activities and which were directed, ratified or tolerated by Defendant.

101. As a direct and proximate result of Defendant's violation of NRS 613.330, Plaintiff suffered lost wages, lost benefits, lost seniority, lost future earnings, lost employment opportunities, humiliation, embarrassment, and loss of self-esteem in an amount to be determined at trial. Plaintiff seeks all legal and equitable remedies available at law.

### PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE Plaintiff prays for judgment as follows:

1.   For appropriate declaratory relief regarding the unconstitutional and unlawful acts of Defendant;

2.   Actual damages in the form of back pay and front pay;

3.   For appropriate compensatory damages in an amount to be determined at trial;

4.   For punitive damages in an amount to be determined at trial;

/ / /

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896

1      5.   For appropriate equitable relief against Defendant as

2  allowed by law, including the enjoining and permanent restraining

3  of these violations, and direction to Defendant to take such

4  affirmative action necessary to ensure that the effects of the

5  unconstitutional and unlawful employment practices are eliminated

6  and do not continue to affect Plaintiff's or others' employment

7  opportunities;

8      6.   For an award of reasonable attorney fees and costs; and

9      7.   For such other and further relief to which Plaintiff may

10  show herself justly entitled.

11      Dated this 22nd day of October, 2018.

12                   DYER LAWRENCE, LLP

14            By: _____

15                   Francis C. Flaherty
                  Nevada Bar No. 5303

16                   Casey C. Gillham
                  Nevada Bar No. 11971

F:\cases\cases17\17223\District Court\180426 Complaint.wpd

- 22 -

Dyer Lawrence, LLP
2805 Mountain Street
Carson City, Nevada 89703
(775) 885-1896