UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JENNY A. HUNT, f.k.a. JENNY A. RICCI, <br><br> Plaintiff, <br><br> v. <br><br> WASHOE COUNTY SCHOOL DISTRICT, a political subdivision of the State of Nevada, <br><br> Defendant. | Case No. 3:18-cv-00501-LRH-WGC <br><br> ORDER |

Before the court is the Washoe County School District's ("defendant" or "the District") motion to dismiss plaintiff's first, third, fourth, fifth and sixth causes of action. ECF No. 7. Jenny A. Hunt, fka Jenny A. Ricci, plaintiff, responded (ECF No. 11), to which defendant replied (ECF No. 19). In light of defendant's motion, Hunt filed a motion for leave to file an amended complaint. ECF No. 14. Accordingly, defendant opposed the motion (ECF No. 18), to which plaintiff replied (ECF No. 23). After close of briefing, defendant motioned the court for leave to file supplemental authority. ECF No. 29. Plaintiff opposed this motion (ECF No. 30), and the District replied (ECF No. 31). The court now rules on all pending motions.

**I. BACKGROUND**

In 2015, the State of Nevada Department of Education ("NDE") expressed concerns to the District regarding the services the District provided students with disabilities and the District's compliance with the Individuals with Disabilities Act ("IDEA"). ECF No. 1 ¶ 22. The NDE was concerned that the District's violations of IDEA were "indicative of a fundamental systematic

1

noncompliance with IDEA and Nevada law." *Id.* Following an investigation, the District took steps to reform its special education practices, including implementing leadership changes. *Id.* ¶ 23.

As part of one of these leadership changes, Hunt was hired by the District in 2015 as the "Student Support Services Performance & Instruction Executive Director" for the Office of Student Services ("OSS"). *Id.* ¶¶ 1; 23-24. Hunt, and David Frydman, her male colleague, were placed under the direction of OSS Chief, Dr. Byron Green and were tasked with implementing changes and systems to ensure that the District was operating in compliance with IDEA. *Id.* ¶ 24. Hunt alleges that OSS encountered "resistance and push-back" from schools and school administrators in response to guidance she provided "to make the District IDEA compliant." *Id.* ¶¶ 24-25. Hunt alleges that the District's Chief School Performance Officer, Paul LaMarca, "actively solicit[ed] complaints against OSS and Plaintiff from District principals." *Id.* ¶ 24. Hunt states that "individuals and the Washoe School Principals Association ("WSPA")" filed complaints against her "specific to the guidance Plaintiff provided to schools to comply with IDEA and District guidelines." *Id.* ¶ 25.

Hunt states: "[u]pon receipt of each complaint, [she] requested feedback from Dr. Green, and she also requested his review of her ongoing emails to principals in an effort to prevent or mitigate future complaints." *Id.* ¶ 26. Hunt alleges that, "Dr. Green's feedback was that her behavior was professional, that her decisions were supported by the data and that a change was not needed." *Id.* Hunt claims that at no point in the wake of the complaints was she directed by Dr. Green, Kristen McNeill ("McNeill") the deputy superintendent, or Traci Davis ("Davis") the superintendent, to alter the approach she was using or the guidance she was providing. *Id.* ¶ 27.

Hunt alleges that in the spring of 2016, the WSPA wrote a letter "lashing out at OSS" as a result of articles published in the Reno Gazette Journal critical of the District's treatment and the graduation rates of special education students. *Id.* ¶ 28. In response, Hunt asserts that she "began sharing" with Dr. Green "concerns" she had regarding "untruthful allegations" levied against OSS, and the "bullying behavior" of LaMarca. *Id.* ¶ 29. Hunt claims that it was "of great concern" to her that LaMarca supposedly treated Frydman differently than her. *Id.* Specifically, Hunt claims that Frydman was not targeted by "solicited, spurious complaints" and that LaMarca refused to work

2

directly with her. *Id*. Hunt asserts that additional examples of unequal treatment were provided in a formal complaint that she filed regarding LaMarca's behavior on May 19, 2017. *Id*.

Hunt alleges that at the start of the 2016-2017 school year, principals, area superintendents, and LaMarca, "continued to resist" guidance and direction from OSS. *Id*. ¶ 30. Hunt claims that Davis and McNeill reassured her that the District's expectations for special education included "holding staff accountable, ensuring IDEA compliance, and professional communication and behavior with colleagues." *Id*. Hunt alleges that her efforts to meet this expectation and facilitate change were "repeatedly resisted." *Id*. ¶ 31. Hunt claims that as a result of efforts to provide guidance for special education reform, she was subsequently subjected to a multitude of false allegations, complaints, and allegations that she was unprofessional. *Id*. ¶¶ 32-35. Hunt further alleges that she requested meetings to collaborate and mediate with principals in order to prevent and mitigate future complaints, but that she did not receive a response from LaMarca or McNeil. *Id*. ¶ 33.

On March 30, 2017, Hunt and Dr. Green were placed on administrative leave pending an investigation of allegations that they engaged in misconduct. *Id*. ¶ 36. On April 3, 2017, she "[s]hared her concern with McNeill that this was continued harassment and bullying by WSPA and LaMarca," and was informed that her concern would be added to the Solutions at Work ("SAW") investigation, an outside investigation firm retained by the District. *Id*. ¶ 37. Hunt states that during her April 25, 2017 and May 2, 2017 investigative meetings with SAW she was not asked about these allegations and that SAW provided "glib and cursory" responses to Hunt's concerns. *Id*. ¶¶ 37, 41. Hunt asserts that she was only asked "vague questions" that "had no rational relationship" to the allegations of bullying, harassment, and misconduct that were made against her. *Id*. ¶ 41. Hunt further claims that Dr. Green was treated differently during his investigative meetings: he was allowed "access to his email, calendar and other materials to use as a reference in responding to questions." *Id*. ¶ 42.

On May 11, 2017, Hunt's attorney sent a letter to the District's legal office requesting a copy of her employment records and suggesting a meeting or mediation among Hunt and any complainants, though nothing came of this inquiry. *Id*. ¶ 43. Then, on June 27, 2017, Hunt was

3

interviewed by an investigator with Grate Investigations, another outside investigation firm retained by the District, regarding a May 17 complaint she made against LaMarca. *Id*. ¶ 46. Hunt asserts that the investigator's questions were "vague" and difficult to answer because she was again not given access to her email, calendar, and daily journals to use for reference. *Id*. ¶¶ 46. Hunt further claims that though she'd been assured that this interview would not rehash issues investigated by SAW, she was asked questions that pertained to the previous investigation and that "had no relevance" to the complaint plaintiff had levied against LaMarca. *Id.* ¶ 47.

Hunt remained on leave for another 23 weeks before she was dismissed on October 23, 2017. *Id*. ¶ 44. On October 22, 2018, Hunt filed a complaint against the District asserting seven causes of action.[1] ECF No. 1. The District filed a motion to dismiss Hunt's first, third, fourth, fifth, and sixth causes of action (ECF No. 7), arguing that each fails to state a claim upon which relief can be granted. Hunt filed a response, (ECF No. 11) and the District replied, (ECF No. 19). On January 22, 2019, Hunt then filed a motion for leave to file an amended complaint, (ECF No. 14), which the District opposed, (ECF No. 18), and Hunt replied, (ECF No. 23). Finally, on May 14, 2019, the District filed a motion for leave to file supplemental authority. ECF No. 29. Hunt opposed the motion, (ECF No. 30), and the District replied, (ECF No. 31). The court now rules on all pending motions.

## II. LEGAL STANDARD

**Motion to Dismiss Pursuant to Federal Civil Procedure Rule 12(b)(6)**

A party may seek the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a legally cognizable cause of action. *See* FED. R. CIV. P. 12(b)(6) (stating that a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the notice pleading standard of Federal Rule 8(a)(2). *See Mendiondo v. Centinela Hosp. Med. Ctr.*,

---

[1] (1) violation of due process guaranteed by the Fourteenth Amendment; (2) sex discrimination in violation of Title VII of the Civil Rights Act of 1964; (3) retaliation in violation of Title VII of the Civil Rights Act of 1964; (4) retaliation in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*; (5) retaliation in violation of Title II and V of the Americans with Disabilities Act; (6) violation of Section 504 of the Rehabilitation Act; and (7) sex discrimination in violation of NRS § 613.330. ECF No. 1 at 15-21.

521 F.3d 1097, 1103 (9th Cir. 2008). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8(a)(2) does not require detailed factual allegations; however, a pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient and fails to meet this broad pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To sufficiently allege a claim under Rule 8(a)(2), viewed within the context of a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the alleged misconduct. *See id.* at 678-679 (stating that "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks and citations omitted)). Further, in reviewing a motion to dismiss, the court accepts the factual allegations in the complaint as true. *Id.* However, bare assertions in a complaint amounting "to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 698) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion— even if that conclusion is cast in the form of a factual allegation." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id*. (internal quotation marks omitted).

///

///

///

## III. DISCUSSION

**A. Because NRS § 388.1215 may control the outcome of aspects of this litigation, the court finds good cause to grant the District's motion for leave to file supplemental authority.**

After briefing closed on defendant's motion to dismiss, the District filed a motion for leave to file supplemental authority (ECF No. 29), arguing that newly found authority controls Hunt's due process claim. The District seeks to bring NRS § 388.1215 to the court's attention, which provides a definition of "administrator." The District argues this statute establishes that Hunt does not qualify for certain protections under NRS Chapter 391, and therefore, her due process claim fails as a matter of law. Plaintiff opposed this motion (ECF No. 30), and the District replied (ECF No. 31).

The district court has discretion to grant a request to supplement authorities on a showing of good cause. *See* LR 7-2(g). Good cause exists when the supplemental authorities "control the outcome" of the litigation. *JP Morgan Chase Bank, N.A. v. Resources Grp., LLC*, Case No. 2:17-CV-225 JCM (NJK), 2018 WL 894612, at *5 (D. Nev. Feb. 13, 2018). Good cause also exists when the supplemental authority is precedential or is an authority that is particularly persuasive or helpful. *See, e.g., Puczko v. Law Office of Sipe & Landon*, Case No. CV 09-256-TUC-JMR, 2010 WL 11519290, at *3 (D. Ariz. Mar. 16, 2010). Hunt cites no case law in her opposition that supports denying the District's motion. Hunt argues that the statute should be disregarded because the District failed to cite it in its initial briefing. The court disagrees—the court must comply with the law regardless of whether the parties cited to such law in the briefing. *See*, e.g., *EEOC v. Kovacevich "5" Farms*, Case No. 1:06 CV 0165 OWW TAG, 2006 WL 3060149, at *2 (E.D. Cal. Oct. 27, 2006) ("Because any decision on a motion should comply with the law, appropriate legal authority should not be disregarded merely because it was not cited in an initial brief.").

The court finds, as discussed below, that the proffered supplemental authority, NRS § 388.1215, is sufficiently controlling and instructional to create "good cause" to grant defendant leave to supplement its motion to dismiss. Accordingly, defendant's motion (ECF No. 29) is granted and NRS § 388.1215 will be considered in deciding the District's motion to dismiss.

///

**B. The court finds that Hunt's first cause of action for violation of her due process rights fails as a matter of law and is therefore dismissed.**

The Due Process Clause provides that a state may not deprive a person of life, liberty, or property without due process of law. U.S. CONST. amend, XIV, § 1. 48 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injury in an action at law[.]

"Local governmental entities are 'persons' for the purposes of §1983 and can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). In order to bring a successful § 1983 claim, the plaintiff must show "(1) that [she] possessed a constitutional right of which [she] was deprived; (2) that the [governmental actor] had a policy; (3) that the policy amounts to deliberate indifference to [the plaintiff's] constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Id.* (internal quotations and citations omitted). Here, plaintiff alleges that she had a constitutionally protected property interest in continued employment with the District which was infringed upon when she was terminated without a hearing or other procedural protections provided by NRS §§ 391.750 through 391.800.

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules and understandings that stem from an independent source such as state law. . . .'" *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). To show a protected property interest, "a person clearly must have more than an abstract need or desire for it. [She] must have more than a unilateral expectation of it. [She] must instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. A property interest is created in public employees who are entitled by state statute to retain their positions "during good behavior and efficient service" and "who could not be

dismissed 'except… for… misfeasance, malfeasance, or nonfeasance in office.'" *Laudermill*, 470 U.S. at 538-39.

NRS Chapter 391 of Title 34. Education, much like the underlying statute in *Laudermill*, establishes procedures that govern the management of personnel matters by state school districts. Chapter 391 specifically provides procedural protections for certain teachers and administrators in their continued employment.[2] Based on the plain language of Chapter 391, there is a protected property interest in continued employment with the District for qualified teachers and administrators. *See Nelson v. Halima Academy Charter School*, Case No. 03:05-CV-0171-LRH(RAM), 2006 WL 1994878, at *2 n.4 (D. Nev. July 14, 2006) ("In essence section 391.312 provides that public school teachers and administrators cannot suffer adverse employment actions without cause."). While it is clear that Hunt was not a teacher, the court must evaluate whether, as a Student Services Performance & Instruction Executive Director, she qualified as an "administrator," such that she would be entitled to the Chapter 391 protections.

Chapter 391 defines "administrator" as "any employee who holds a license as an administrator and who is employed in that capacity by a school district." NRS § 391.650(1). "'When the language of a statute is plain and subject to only one interpretation, [the court] will give effect to that meaning and will not consider outside sources beyond that statute.'" *Nuleaf CLV Dispensary, LLC v. State Dep't of Health & Human Servs.*, 414 P.3d 305, 309 (Nev. 2018) (quoting *Nev. Attorney for Injured Workers v. Nev. Self-Insurers Ass'n*, 225 P.3d 1265, 1271 (Nev. 2010)). However, if "the statute is ambiguous and subject to more than one interpretation, [the court] will evaluate legislative intent and similar statutory provisions and construe the statute in a manner that conforms to reason and public policy." *Id.* (internal quotation marks omitted). Here, Chapter 391 does not provide a plain, unambiguous definition for administrator; therefore, the court must look to the larger statutory scheme.

---

[2] Among other sections, NRS § 391.750 provides the grounds on which an administrator may be demoted, suspended, dismissed, or not reemployed, and NRS § 391.760 provides that "If a superintendent has reason to believe that cause exists for the dismissal of a licensed employee," the superintendent can suspend the employee without a hearing. However, within 10 days after the suspension becomes effective, the superintendent shall begin proceedings pursuant to NRS §§ 391.680 to 391.810, inclusive, to carry out the employee's dismissal.

8

The District points the court to NRS § 388.1215, which provides that an "administrator" is a "principal, administrator or other person *in charge of a school*." (emphasis added).[3] Chapter 388 (System of Public Instruction) and Chapter 391 (Personnel) are similar statutory provisions and can be read together. Both chapters relate to public education and are found within Title 34. Education. Further, NRS § 388.1215 provides a more specific definition of "administrator" which is helpful to the court in interpreting NRS § 391.650(1). *See State Dep't of Taxation v. Masco Builder*, 312 P.3d 475, 478 (2013) ("A specific statute controls over a general statute." (internal quotation omitted)). Additionally, consistent with the definition of "administrator" provided in NRS § 388.1215, the only specific examples of administrators in Chapter 391 are school principals and vice principals. *See, e.g.*, NRS §§ 391.655; 391.725; 391.820(8).

Hunt cites to NRS § 288.170(2) which, in part, pertains to the determination of bargaining units and labor unions for school district administrators. Hunt encourages the court to look to this statute in determining the meaning of administrator, which provides that a "principal, assistant principal or other school administrator, school district administrator or central office administrator below the rank of superintendent, associate superintendent or assistant superintended shall not be a member of the same bargaining unit with public school teachers." *Id.* While this statute appears to indicate that there are administrators other than principals and vice principals, NRS § 288.170(2) fails to clarify whether a Leadership Team employee qualifies as an administrator within the confines of Chapter 391. Additionally, NRS § 288.170(2) is in a wholly separate Title (Title 23. Public Officers and Employees) and Chapter (288. Relations Between Governments and Public Employees) of the NRS, and unlike Chapters 388 and 391, does not pertain to education. Therefore, the court does not find NRS § 288.170(2) controlling.

Rather, the court finds that to be an administrator within Chapter 391, the employee must hold a license as an administrator and be employed by the District in that capacity. NRS § 391.650(1). The court interprets "be employed in that capacity," to mean the employee must "*be*

---

[3] Even if the court had not granted the District's motion for leave to file supplemental authority, *supra* part A, the court would still consider NRS § 388.1215. The court can and routinely does conduct independent research and address relevant law even when the parties fail to do so in their briefing. NRS § 388.1215 provides a definition of "administrator" within a closely related chapter regarding Nevada's System of Public Education and is certainly relevant to this case.

*in charge of a school*" at the time of termination. NRS § 388.1215 (emphasis added). Here, Hunt has failed to allege in her Complaint any facts to support that she was an administrator such that she would qualify for the Chapter 391 procedural protections. Hunt fails to allege in her Complaint that she holds a valid administrator's license. Hunt, in her opposition, attached her administrator's license, and requests the court take judicial notice of the license pursuant to Federal Rule of Evidence 201. ECF Nos. 11 & 11-4. However, even if the court were to take judicial notice of plaintiff's license, the factual allegations must also allege that she was employed in that capacity at the time of her termination. Hunt, however, provides no indication that she was ever in charge of school while employed as a Leadership Team employee. Because Hunt fails to allege that she was employed in the capacity of an administrator, she cannot qualify for the Chapter 391 procedural protections. Accordingly, she has failed to state a claim that she had a protected property interest in continued employment with the District; therefore, her due process claim must be dismissed.[4]

### C. The court dismisses plaintiff's third cause of action for retaliation and retaliatory termination for opposing sex discrimination imposed on her by the District, brought pursuant to Title VII of the 1964 Civil Rights Act.

Under Title VII:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). "To succeed on a retaliation claim, a plaintiff must first establish a prima facie case establishing: (1) 'that she engaged in a protected activity,' (2) she subsequently experienced an adverse employment action, and (3) a 'causal link exists between the two.'" *Jordan*

---

[4] The District filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), therefore, the court does not come to its conclusion based on the parties' exhibits attached to the motion briefing. *See Keams v. Tempe Tech. Inst., Inc.*, 110 F.3d 44, 46 (9th Cir. 1996) (a motion to dismiss need not be converted to a motion for summary judgment provided that the court does not rely on such exhibits). However, the court would note that it is well established that if "a state employee serves at will, he or she has no reasonable expectation of continued employment, and thus no property right." *Dyack v. Commonwealth of the N. Mariana Islands*, 317 F.3d 1030, 1033 (9th Cir. 2003) (citing *Brady v. Gebbie*, 859 F.2d 1543, 1548 (9th Cir. 1988)). The court's preliminary impression is that the exhibits presented to the court for review show that Hunt was an at-will employee, and amendment of this cause of action may be futile. *See* ECF Nos. 7-1 & 7-2.

*v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988) (quoting *Cohen v. Fred. Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)). Successful Title VII retaliation claims must "be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m)," which requires "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

The District argues that plaintiff's third cause of action is deficient because she failed to adequately plead causation; specifically, the District argues that plaintiff's reliance on the "motivating factor" standard rather than the "but-for" causation standard renders plaintiff's complaint deficient. The court agrees with the District that plaintiff, in light of *Nassar*, must allege but-for causation, not a motivating factor standard, for her claim to survive. As plaintiff concedes that she has failed to do so, the court must dismiss plaintiff's third cause of action.

**D. The court dismisses plaintiff's fourth cause of action for retaliation under Title IX of 20 U.S.C. § 1681.**

The District moves to dismiss Hunt's Title IX retaliation claim arguing that it fails as a matter of law because it is preempted by her Title VII retaliation claim. On this issue the circuit courts are split: the First, Third, Fourth, Sixth, and Eighth Circuits have found no preemption,[5] and the Fifth and Seventh Circuits have found that Title VII does preempt Title IX.[6] The Ninth Circuit has yet to weigh in.

---

[5] *See*, *e.g.*, *Lipset v. Univ. of Puerto Rico*, 864 F.2d 881, 896 (1st Cir. 1988) (Title VII and Title IX prohibit the same conduct, utilizing Title VII as "the most appropriate analogue" in a Title IX case); *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 564 (3rd Cir. 2017) (reasoning that whether a plaintiff "could also proceed under Title VII is of no moment, for Congress provided a variety of remedies, at times overlapping, to eradicate private-sector employment discrimination." (internal quotation omitted)); *Preston v. Commonwealth of Virginia ex rel. New River Community College*, 31 F.3d 203, 205-206 (4th Cir. 1994) (holding that a private right of action separate from Title VII exists under Title IX for employment discrimination); *Ivan v. Kent State Univ.*, 92 F.3d 1185, 1996 WL 422496, at *2 (6th Cir. 1996) (unpublished) (allowing plaintiff to proceed with an independent Title IX cause of action against her employer for alleged sex discrimination in employment); *Brine v. University of Iowa*, 90 F.3d 271, 276 (8th Cir. 1996) (agreeing with the First and Fourth Circuit decisions in *Lipset* and *Preston*).

[6] *See e.g.*, *Lakowski v. James*, 66 F. 3d 751, 753 (5th Cir. 1995) (holding that "Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions," when the individual seeks money damages under Title IX . . . for employment practices for which Title VII provides a remedy.); *Waid v. Merrill Area Public Schools*, 91 F. 3d 857, 862 (7th Cir. 1996) (finding that Title VII preempted Title IX for the claims of equitable relief).

The Court agrees with the majority of circuits and finds that Hunt's Title VII claim does not bar her claim for retaliation under Title IX. The court adopts the Third Circuit's persuasive holding in *Mercy*:

> [A] private retaliation claim exists for employees of federally-funded education programs under Title IX notwithstanding Title VII's concurrent applicability. . . . When a funding recipient retaliates against a "person," including an employee, because she complains of sex discrimination, that's "intentional discrimination" based on sex, violative of Title IX and actionable under *Cannon*'s implied cause of action. Whether that person could also proceed under Title VII is of no moment, for Congress provided a "variety of remedies, at times overlapping, to eradicate" private-sector employment discrimination.

*Mercy*, 850 F.3d at 563-64 (internal citations omitted). Like in *Mercy*, the court declines to follow *Lakoski* and *Waid*, finding these decisions unpersuasive in light of the Supreme Court's subsequent decision in *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005). *See id.* at 563.

While Hunt's Title IX claim is not barred by her Title VII claim, the court must now determine whether plaintiff has properly alleged her Title IX claim. Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). The Supreme Court in *Jackson* concluded that "when a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX." *Jackson*, 544 U.S. at 174 (emphasis in original).

To state a claim for Title IX retaliation, Hunt must allege that the District is a recipient of federal funding, and that the District retaliated against her *because* she complained of sex discrimination. *Id.* The causation standard to be used for evaluating such claims has not been determined by the Supreme Court, this Circuit, or this District; however, other courts have looked to Title VII to evaluate Title IX claims. *See e.g., Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017) (determining that the elements for both Title VII and Title IX claims are the same, and that the but-for causation standard from *Nassar* applied to both); *Cavalier v. Catholic Univ. of Am.*, 306 F.Supp.3d 9, 36 (D.D.C. 2018) ("Various decisions

from this district and from other circuits . . . have generally held that Title VII's retaliation standard governs." (internal quotation omitted)); and *supra* note 5. Therefore, the court is persuaded that the but-for causation standard for Title VII retaliation claims should apply to Title IX retaliation claims as well.

Hunt alleges the following: that the District receives federal education funding (ECF No. 1 ¶ 81); that she complained to her supervisor and the District's lawyer about sex discrimination by LaMarca (*id.* ¶ 82); and that the District took adverse action against her by investigating her and ultimately firing her (*id.* ¶ 83). Plaintiff however fails to allege that the District took this adverse action *because* she complained about the alleged sex discrimination, nor does she allege that the but-for cause of the adverse employment action was her complaints regarding LaMarca's behavior. Because plaintiff has failed to allege but-for causation her fourth cause of action fails and is dismissed.

### E. The court grants defendant's motion to dismiss plaintiff's fifth cause of action for retaliation under Title II and V of the Americans with Disabilities Act ("ADA").

The District first argues that plaintiff's fifth cause of action must be dismissed because Title II of the ADA does not cover employment and because Hunt is not a "qualified individual with a disability." The Ninth Circuit addressed this standing issue directly in *Barker v. Riverside Office of Education*, 584 F.3d 821 (9th Cir. 2009). The anti-retaliation provision of Title II of the ADA states:

> (a) No private or public entity shall discriminate against *any individual* because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.
>
> (b) No private or public entity shall coerce, intimidate, threaten, or interfere with *any individual* in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

28 C.F.R. 35.134 (emphasis added). The Ninth Circuit reasoned that "the use of the phrase 'any individual' and the absence of any language limiting standing to those with disabilities indicates Congress's intent to grant standing under Title II 'as broadly as is permitted by Article III of the

13

Constitution.'" *Barker*, 584 F.3d at 827 (citing *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 47 (2d Cir. 1997)). The Court determined that Barker had standing under Clause (a) because she "engaged in activities opposing her school's special education policies that allegedly violated the ADA," and under Clause (b) because she "alleges that she was intimidated by her supervisor for her role in advocating for her students." *Id.* at 827-28.

Much like the plaintiff in *Barker*, Hunt does not allege that she lost her job because her employer discriminated against her because of a disability *she had* or accommodations she requested—such an allegation would only qualify her for relief under Title I of the ADA. *See id.* at 828 (citing *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169, 1178 (9th Cir. 1999) ("We held in *Zimmerman* that the plaintiff's claim should have been brought under Title I of the ADA instead of under Title II, because the plaintiff claimed his employer discriminated against him because he had a disability, and employment violations are protected under 'Title I: Employment.'").[7] Instead, Hunt alleges that she was retaliated against and subsequently fired because she advocated for disabled students who were allegedly receiving inadequate public services — educational services provided by a public school — which are covered under Title II of the ADA.[8] *See* ECF No. 1 ¶¶ 86-92; 42 U.S.C. § 12131, *et seq*. Therefore, like in *Barker*, Hunt's fifth cause of action is appropriately brought under Title II of the ADA.

However, the District further argues Hunt's ADA claim fails because she has not adequately plead but-for causation. Hunt concedes that this causation standard is applicable to her Title II retaliation claim and that she has failed to meet this standard. Therefore, because the complaint has failed to allege but-for causation, the court must dismiss her fifth cause of action.

---

[7] Additional case law cited by the District is similar to that of *Zimmerman*—each case deals with a plaintiff who is claiming *he or she* was discriminated against and retaliated against due to voicing concerns or making complaints regarding this discrimination. However, *Barker* informs this court that a claim under Title II of the ADA can proceed when the plaintiff is an individual who has allegedly complained that an organization is failing to properly follow the ADA on behalf of other individuals, and is then retaliated against for making those concerns known. Hunt, who claims she was retaliated against for her attempt to stop the District from violating the rights of students with disabilities, not her own rights under the ADA, falls squarely within the *Barker* standard.

[8] The District also argues that this claim fails because Hunt did not allege ADA claims in her EEOC charge. ECF No. 7 at 22. The court is satisfied that her EEOC charge adequately alleged retaliation claims and this specific allegation is contained within the charge. *See* ECF No. 7-4.

*See T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (finding that the "more stringent" but-for causation standard articulated in *Nassar* applies to retaliation claims under Title I and II of the ADA).

**F. Plaintiff's sixth cause of action, violation of Section 504 of the Rehabilitation Act, is dismissed.**

Lastly, the District moves to dismiss Hunt's sixth cause of action, retaliation in violation of Section 504 of the Rehabilitation Act, arguing that it fails because Hunt has not plead but-for causation. ECF No. 7 at 24 (citing *Palmquist v. Shinseki*, 689 F.3d 66 (1st Cir. 2012)). Like with her ADA claim, Hunt concedes that the but-for causation standard is likely applicable to her Section 504 claim and requests leave to amend her complaint.

As the District noted, the Ninth Circuit has yet to address what causation standard is applicable for Section 504 claims. However, the First Circuit's reasoning in *Palmquist*, that the ADA but-for causation standard should apply, is persuasive:

> [T]he Rehabilitation Act borrows the causation standard from the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12111 – 12213; *see* 29 U.S.C. § 791(g). This borrowed provision of the ADA states that no person shall retaliate against an individual "*because* such individual has opposed any [discriminatory] act or practice. *See* 42 U.S.C. § 12203(a) (emphasis supplied).
> This language contrasts sharply with the 'motivating factor' standard used in section 2000e-2(m). It is however, very similar to the more rigorous causation standard used in the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. 621-634, which makes it unlawful to discriminate against an individual 'because of such individual's age.' *See* 29 U.S.C. § 623(a)(1).

689 F.3d at 73-74 (emphasis in original). The court is further persuaded that the but-for causation standard is appropriate for Section 504 claims because like the First Circuit, the Ninth Circuit has also highlighted the similarities between retaliation claims under Section 504 and Title II of the ADA. *See Barker*, 584 F.3d (finding the plaintiff had standing under both Section 504 and Title II of the ADA based on similar statutory language and reasoning). Therefore, the court is persuaded that the plaintiff must plead but-for causation for her claims under Section 504 to proceed.

As with Hunt's ADA claim, she concedes that she failed to plead but-for causation. Accordingly, the court grants defendant's motion and dismisses Hunt's sixth cause of action.

**G. Plaintiff's motion to amend the complaint is denied as premature.**

In the event a court dismisses the complaint, or a part thereof, the court shall grant leave to amend freely "when justice so requires." FED. R. CIV. P. 15(a). The Ninth Circuit frequently considers five factors when deciding whether to grant leave to amend a complaint: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his or her complaint. *United States ex rel. Lee v. Corinthian Colleges*., 655 F.3d 984, 995 (9th Cir. 2011) (citing *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Absent prejudice, or a strong showing of the above factors, there is presumption in favor of granting leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). However, a court need not grant leave to amend a complaint if amendment would be futile. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998); *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008). Further, futility alone can justify the denial of a motion for leave to amend. *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015).

When plaintiff responded to the District's motion to dismiss, she, in part, recognized the deficiencies in her complaint and motioned the court for leave to amend. The District argued, in part, that the proposed amendments would result in undue delay and prejudice. The court is unpersuaded by the District's argument and the cited case law to this point: Hunt's proposed amended complaint is largely the same as her original complaint, Hunt does not bring "new causes of action," "new allegations," or "new theories," but rather simply seeks to clarify certain parts of her complaint and plead selected causes of action in the alternative. Therefore, the court does not find that allowing plaintiff the opportunity to amend will result in undue delay or prejudice to defendant.

However, plaintiff's pending motion to amend is premature—such motions should be made if and when the court grant's a defendant's motion to dismiss. Therefore, the court denies her motion, but it will grant plaintiff leave to amend her complaint in light this Order. All amendments should be directly related to the deficiencies in the complaint that the court has noted above. Further, Hunt should be cognizant that an amended complaint consisting of labels and legal conclusions amounting to little more than a recitation of the elements unsupported by the facts

alleged, will not be entitled to an assumption of the truth. Such amendments would be considered futile, and the court would not grant such a motion.

The court further notes that "a party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single [claim] . . . or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." FED. R. CIV. P. 8(d)(2). The District's reliance on *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, to argue the plaintiff cannot plead more than one but-for cause is in error. 540 F.3d 1049 (9th Cir. 2008). The Ninth Circuit, reasoned that the Seventh Circuit's holding that "a plaintiff can plead 'himself out of court' by alleging particulars that contradict the plaintiff's legal theory, . . . is applied in this circuit as support for the rule that precludes a party from avoiding summary judgment by making statements that contradict earlier allegations." *Id.* at 1065 n.9 (quoting *Thomas v. Farley*, 31 F.3d 557, 559 (7th Cir. 1994)). *Metzler* in no way stands for the proposition that a plaintiff cannot plead alternative but-for causes. Therefore, even if Hunt sets out alternative theories, if any one of them is sufficient, her claim may survive the motion to dismiss stage, even if it may encounter issues at summary judgment.

Finally, the court notes that should plaintiff amend her Title II ADA claim she should be cognizant that such claims are redressable by equitable relief. *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269 (9th Cir. 2009). The Ninth Circuit reasoned:

> The text of section 1981a is not ambiguous. It explicitly delineates the specific statutes under the ADA for which punitive and compensatory damages are available. In particular, section 1981a references 42 U.S.C. §§ 12112 and 12112(b)(5) of the ADA. *See* 42 U.S.C. § 1981a(a)(2). Section 12112 involves discrimination 'against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.' 42 U.S.C. § 12112(a). Section 12112(b)(5) encompasses the failure to make reasonable accommodations and denial of employment opportunities based on a disability. Section 1981a, therefore, limits its remedial reach to ADA discrimination claims, and does not incorporate ADA retaliation claims brought pursuant to 42 U.S.C. § 12203. This limitation is unsurprising because ADA retaliation claims have been historically redressed solely by equitable relief pursuant to 42 U.S.C. § 2000e-4(g)(1). *See, e.g.*, *Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1067-69 (9th Cir. 2005).

*Id.* at 1268; *see also Fee v. Management & Training Corp.*, Case No. 3:12-cv-00302-RCJ-VPC, 2012 WL 4792920, at *4 (D. Nev. Oct. 9, 2012) (dismissing the plaintiff's retaliation claim with

prejudice "to the extent plaintiff seeks damages thereunder," but gave "leave to amend to seek equitable relief," pursuant to *Alvarado*). While *Alvarado* was concerning Title I, the court does not read the Ninth Circuit's broad reasoning regarding ADA retaliation claims as applying solely to Title I retaliation claims.[9] Therefore, the court would caution plaintiff that any amendment to her ADA retaliation claim should articulate the equitable relief plaintiff requests as to this cause of action, not punitive and compensatory damages.

**IV.     CONCLUSION**

IT IS THEREFORE ORDERED that defendant's motion to supplement the record (ECF No. 29) is **GRANTED**.

IT IS FURTHER ORDERED that defendant's motion to dismiss plaintiff's complaint (ECF No.7) is **GRANTED**. Plaintiff's first, third, fourth, fifth, and sixth causes of actions are dismissed with leave to amend.

IT IS FURTHER ORDERED that plaintiff's motion for leave to file an amended complaint (ECF No. 14) is **DENIED without prejudice** as premature.

IT IS FURTHER ORDERED that plaintiff is granted leave to file an amended complaint within **30 days** from the date of entry of this order if she believes she may cure the deficiencies in the Complaint identified in this Order.


IT IS SO ORDERED.

DATED this 9th day of September, 2019.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[9] While plaintiff is correct that Title II authorizes private suits for money damages, *see Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014) (citing 42 U.S.C. § 12133), the court is not persuaded that ADA *retaliation* claims do, even those brought under Title II, in light of the broad reasoning in *Alvarado*.

18